UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY RYAN,

     Plaintiff,

-vs-

HENRY FORD HEALTH SYSTEM,

     Defendant.

Case No. 25-cv-

Hon.

---

Jennifer Lossia McManus (P65976)
Fagan McManus, P.C.
Attorneys for Plaintiff
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
jmcmanus@faganlawpc.com

---

## COMPLAINT AND JURY DEMAND

There is no other pending or resolved civil action
arising out of the transaction or occurrence
alleged in the Complaint.

NOW COMES Plaintiff, TIMOTHY RYAN, by and through his attorneys, FAGAN MCMANUS, P.C., and for his cause of action against the Defendant, states as follows:

## JURSIDCTIONAL ALLEGATIONS

1.    Plaintiff, TIMOTHY RYAN (hereinafter referred to as "Plaintiff"), is an individual residing in the City of Royal Oak, County of Oakland, State

of Michigan.

2. Defendant, HENRY FORD HEALTH SYSTEM (hereinafter referred to as "Defendant" or "HFHS"), is a domestic non-profit corporation with its headquarters located in Detroit, Michigan.

3. At all times pertinent hereto, HFHS did conduct business in the State of Michigan.

4. At all times pertinent hereto, Plaintiff worked out of his home in Royal Oak Michigan and/or out of a HFHS facility in Michigan.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1332 (diversity jurisdiction).

6. The amount in controversy is in excess of $75,000.00, exclusive of all interest, costs, attorney fees and punitive damages.

## GENERAL ALLEGATIONS

7. Plaintiff's date of birth is July 21, 1959.

8. Plaintiff began his employment with Defendant in 2014.

9. Plaintiff was hired into HFHS with the position of System Vice President of Physician Development and maintained that position through the termination of his employment.

10. Plaintiff performed well throughout his employment with Defendant and had only positive performance evaluations from Bob Riney

and Dr. Adnan Munkarah throughout his employment

11.   In early 2023, Defendant announced that it was planning to hire a Vice President of Physician Partnerships.

12.   Throughout the search process, Defendant stated that it preferred to hire an internal candidate.

13.   The role included job duties that were similar to Plaintiffs, plus additional responsibilities.

14.   Plaintiff applied for the Vice President of Physician Partnerships position at the urging of Dr. Munkarah.

15.   Two other internal candidates applied as well.   One was approximately 63 years old, and the other was approximately 55 years old.

16.   In or around August 2023, Defendant hired a significantly younger forty year old woman, Michelle Ilitch as its Vice President of Physician Partnerships.

17.   Plaintiff had significantly more relevant knowledge and experience than Ms. Ilitch in six out of the seven job functions that Defendant identified as requirements of the role during the interview and hire process.

18.   The job functions included Physician Outreach & Strategy, Oversight of Referral Intake, Coordinator of Workforce Plan, Development and Oversight of Analytics and IT, Market Intelligence, Due

Diligence/Physician Contracting, and Facilitating Executive Level Governance for Growth.

19. Ms. Ilitch had only tangential experience in some of these functions and no experience in others.

20. Plaintiff had significantly more relevant knowledge and experience than Ms. Ilitch for the role overall.

21. In her new role, Ms. Ilitch reported to Dr. Abouljoud.

22. During his employment, Plaintiff reported to Robert Riney and Dr. Munkarah.

23. Both Dr. Abouljoud and Dr. Munkarah consistently reassured Plaintiff that Ms. Ilitch was not hired to replace him and that his continued work was essential.

24. However, in August 2024, Plaintiff was notified that Ms. Ilitch was to replace Plaintiff and take over his job duties.

25. Prior to receiving such notice, Plaintiff was working on behalf of Defendant to finalize Defendant's acquisition of a cardiovascular practice with three office locations.

26. In approximately July 2024, Ms. Ilitch became involved in the cardiovascular practice acquisition.

27. During that time, and prior to the closing on the acquisition,

Plaintiff learned that one of the office locations, in Gibraltar, Michigan, allowed a private non-HFHS physician to sublease office space within the office through a verbal agreement.

28.     The non-HFHS physician was known to send profitable complex cases to HFHS.

29.     During the transition for the acquisition of the cardiovascular practice, the non-HFHS physician reached out to Ms. Ilitch and Dr. Abouljoud to discuss his concerns about the acquisition and his sublease arrangement with the cardiovascular practice.

30.     Ms. Ilitch and Dr. Abouljoud had dinner with the non-HFHS physician, after which Plaintiff learned that Dr. Abouljoud sent an email stating that HFHS should do whatever it could to accommodate the non-HFHS Physician since he referred complex cases to HFHS, and imploring that the sublease be permitted to continue so that the referral relationship was not ruined.

31.     In early August 2024, Plaintiff shared his concerns about allowing the non-HFHS Physician to continue to sublease the space without a written lease with a HFHS in-house attorney.   The attorney agreed with his concern.

32.     Plaintiff's employment with HFHS was terminated on August 19, 2024 shortly after he reported the concerns to HFHS legal counsel.

33.    On October 29, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging age discrimination in violation of the Age Discrimination in Employment Act.

34.    Over 60 days have passed on Plaintiff's filing of the EEOC Charge, therefore, Plaintiff has initiated this lawsuit.

## COUNT I
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

35.    Plaintiff incorporates the above paragraphs as if specifically repeated herein.

36.    At all times pertinent hereto, Plaintiff was qualified for protection against age discrimination under the Age Discrimination in Employment Act of 1967, as amended (hereinafter "ADEA").

37.    Pursuant to the ADEA, specifically 29 U.S.C. §623(a), it shall be unlawful for an employer:

    a.    to discharge any individual or otherwise discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such an individual's age.

38.    Defendant is an employer within the meaning of the ADEA.

39.    Defendant discriminated against Plaintiff because of his age and violated the ADEA in the following particulars:

    a.    Unlawfully terminating Plaintiff's employment due to his age;

b.    Hiring a younger employee into a position for which Plaintiff was more qualified;

c.    Replacing Plaintiff with a younger employee;

d.    Failing to consider Plaintiff for the Vice President of Assistant Partnerships role;

e.    Other acts of discrimination to be determined through discovery.

40.    As a direct and proximate result of Defendant's discriminatory conduct toward Plaintiff in violation of the ADEA, Plaintiff has suffered and in the future will suffer damages including, but not limited to:

a.    Loss of wages and other forms of compensation, both in the past and in the future, including:

i.    The loss of wages;

ii.    The loss of promotional opportunities;

iii.    The loss of earning capacity;

iv.    Other damages to be determined.

41.    The above-referenced discriminatory conduct by Defendant toward Plaintiff was willful and, as a result, Plaintiff is entitled to liquidated damages pursuant to 29 U.S.C. §626(b).

42.    Plaintiff is also seeking equitable relief, including back-pay, front-pay, or other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays that this Honorable Court enter Judgment against Defendant, in whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, past and future, together with interest, costs, an award of attorney fees, and an award of liquidated damages.  Plaintiff is also seeking equitable relief, including back-pay, front-pay, or other equitable relief the Court deems appropriate.

## COUNT II
## VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT

43. Plaintiff incorporates the above paragraphs as if specifically repeated herein.

44. Defendant is an employer as defined pursuant to §201(a) of the Elliott-Larsen Civil Rights Act (hereinafter "ELCRA").

45. Pursuant to §202 of the ELCRA, an employer shall not:

    a. fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition or privilege of employment, because of … age.

46. Defendant discriminated against Plaintiff because of his age and violated the ELCRA in the following particulars, including, but not limited to:

    a. Terminating Plaintiff's employment and replacing him with a substantially younger and less experienced individual;

b.    Failing to consider Plaintiff for the Vice President of Assistant Partnerships role;

c.    Other acts of discrimination to be determined through discovery.

47.    As a direct and proximate result of Defendant's discriminatory conduct toward Plaintiff, Plaintiff has suffered and in the future will suffer damages including, but not limited to:

a.    Loss of wages and other forms of compensation, both in the past and in the future;

b.    Loss of the value of benefits, both in the past and in the future;

c.    Loss of promotional opportunities;

d.    Loss of earning capacity;

e.    Extreme embarrassment, humiliation, mental anguish, disappointment, outrage and indignity;

f.    Exemplary damages;

g.    Other damages to be determined.

48.    Plaintiff also seeks equitable relief including back-pay, front-pay, or other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays that this Honorable Court enter Judgment against Defendant, in whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, past and future, together with interest, costs, and an

award of attorney fees.  Plaintiff is also seeking equitable relief, including back-pay, front-pay, or other equitable relief the Court deems appropriate.

## COUNT III
## FALSE CLAIMS ACT RETALIATION

49.    The anti-retaliation provision of the False Claims Act protects an employee or contractor from being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h).

50.    Relief for violating this section includes reinstatement of the employee, contractor, or agent with the same level of seniority that person would have had but for the discriminatory conduct, as well as double damages for back pay, interest on back pay, and special damages. Relief also includes reasonable attorneys' fees. Id. § 3730(h)(1)(b).

51.    Plaintiff opposed Defendant's conduct violating the Federal Anti-Kickback Statute, 42 U.S.C. §1320(a)-7(b) we well as the Stark Act Anti-Referral Law, 42 U.S.C. §1395nn.

52.    Retaliation for objecting to violations of the Anti-Kickback Statute and the Start Act constitutes illegal retaliation pursuant to the False Claims

Act.

53.    The Anti-Kickback Statute prohibits the knowing and willful payment of "remuneration" to induce or reward patient referrals or the generation of business involving any item or service payable by federal healthcare programs.

54.    Upon information and belief, the lease arrangement which would not otherwise be available to a non-HFHS physician constituted "remuneration" meant to induce, reward or continue patient referrals and the generation of business.

55.    The Physician Self-Referral Law, commonly referred to as the Stark Act Anti-Referral Law, prohibits the referral of patients to receive "designated health services" payable by Medicare or Medicaid from entities with which a treater has a financial relationship.

56.    Upon information and belief, the referrals received from the non-HFHS physicians were for the purpose of providing "designated health services."

57.    Further, upon information and belief, the lease arrangement which would not otherwise be available to a non-HFHS physician constituted a financial relationship between Defendant and the non-HFHS physician.

58.    As explained above, Plaintiff objected to the lease arrangement

that was in place for the non-HFHS physician in order for HFHS to maintain its income-generating referral relationship with the non-HFHS physician, in violation of the False Claims Act, the Anti-Kickback Statute and the Stark Act.

59. Upon information and belief, some of the income-generating cases that were referred to Defendant by the non-HFHS physician who was permitted to continue with a lease in a HFHS facility resulted in the submission of claims for payment to Medicare or Medicaid.

60. Plaintiff believed that this arrangement constituted an impermissible and illegal financial relationship between HFHS and the non-HFHS physician.

61. Plaintiff's objections were well known within HFHS leadership and were voiced to HFHS in-house counsel.

62. Regardless, Defendant insisted that the non-HFHS physician be able to retain his lease arrangement in exchange for the income-generating referral relationship.

63. Plaintiff was subsequently terminated from his employment with Defendant in retaliation to his objections to HFHS illegal conduct, in violation of the anti-retaliation provision of the False Claims Act.

64. Plaintiff has been harmed and continues to be harmed in that he

has and will continue to suffer economic damages, as well as humiliation, outrage, and loss of professional reputation, as a result of Defendant's actions.

65.   As a direct and proximate result of Defendant's discriminatory conduct toward Plaintiff, Plaintiff has suffered and in the future will suffer damages including, but not limited to:

    a. Loss of wages and other forms of compensation including commissions and company stock, both in the past and in the future;

    b. Loss of the value of benefits, both in the past and in the future;

    c. Loss of promotional opportunities;

    d. Loss of earning capacity;

    e. Extreme embarrassment, humiliation, mental anguish, disappointment, outrage and indignity;

    f. Exemplary damages;

    g. Compensatory damages;

    h. Other damages to be determined.

66.   Plaintiff also seeks equitable relief including back-pay, front-pay, liquidated damages, or other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays that this Honorable Court enter Judgment against Defendant, in whatever amount the Court or Jury

determines to be fair, just, and adequate compensation for the injuries and damages sustained, past and future, together with interest, costs, and an award of attorney fees.  Plaintiff is also seeking equitable relief, including back-pay, front-pay, or other equitable relief the Court deems appropriate.

Respectfully submitted,

FAGAN MCMANUS, P.C.

By: /s/ *Jennifer L. McManus*
Jennifer L. McManus  (P65976)
Attorney for Plaintiff
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
Dated:  February 28, 2025          jmcmanus@faganlawpc.com

## PLAINTIFFS' DEMAND FOR JURY TRIAL

NOW COMES the above-named Plaintiff, by and through his attorneys, FAGAN MCMANUS, P.C., and hereby demand trial by jury on the above matter.

Respectfully submitted,

FAGAN MCMANUS, P.C.

By: /s/ *Jennifer L. McManus*
Jennifer L. McManus  (P65976)
Attorney for Plaintiff
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
Dated:  February 28, 2025          jmcmanus@faganlawpc.com